**Nos. 23-2361, 24-1043, -1050, -1318, -1320**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

APPLE INC.,

*Appellant,*

v.

MEMORYWEB, LLC,

*Cross-Appellant.*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board, Nos. IPR2022-00031, -00032, -00033, and PGR2022-00006

## APPLE INC.'S RESPONSE AND REPLY BRIEF

BITA RAHEBI
REBECCA E. WEIRES
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

BRIAN R. MATSUI
SETH W. LLOYD
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel.: (202) 887-8784
BMatsui@mofo.com

*Counsel for Apple Inc.*

SEPTEMBER 26, 2024

## '228 Patent Claims 1 and 15

**1**. A method comprising:

responsive to a first input, causing a map view to be displayed on an interface, the map view including:

(i) an interactive map;

(ii) a first location selectable thumbnail image at a first location on the interactive map; and

(iii) a second location selectable thumbnail image at a second location on the interactive map;

responsive to an input that is indicative of a selection of the first location selectable thumbnail image, causing a first location view to be displayed on the interface, the first location view including (i) a first location name associated with the first location and (ii) a representation of at least a portion of one digital file in a first set of digital files, each of the digital files in the first set of digital files being produced from outputs of one or more digital imaging devices, the first set of digital files including digital files associated with the first location;

responsive to an input that is indicative of a selection of the second location selectable thumbnail image, causing a second location view to be displayed on the interface, the second location view including (i) a second location name associated with the second location and (ii) a representation of at least a portion of one digital file in a second set of digital files, each of the digital files in the second set of digital files being produced from outputs of the one or more digital imaging devices, the second set of digital files including digital files associated with the second location; and

responsive to a second input that is subsequent to the first input, causing a people view to be displayed on the interface, the people view including:

(i) a first person selectable thumbnail image including a representation of a face of a first person, the first person being associated with a third set of digital files including digital photographs and videos;

(ii) a first name associated with the first person, the first name being displayed adjacent to the first person selectable thumbnail image;

(iii) a second person selectable thumbnail image including a representation of a face of a second person, the second person being associated with a fourth set of digital files including digital photographs and videos; and

(iv) a second name associated with the second person, the second name being displayed adjacent to the second person selectable thumbnail image.

**15**. The method of claim 1, further comprising:

responsive to an input that is indicative of a selection, in the first location view, of the representation of the at least a portion of the one digital file in the first set of digital files, causing a first digital file to be displayed on the interface; and

responsive to an input that is indicative of a selection, in the second location view, of the representation of the at least a portion of the one digital file in the second set of digital files, causing a second digital file to be displayed on the interface.

**'658 Patent Claim 1**

**1**. A computer-implemented method of displaying at least a portion of a plurality of (i) digital photographs, (ii) videos, or (iii) a combination of (i) and (ii), each of the digital photographs and videos being associated with a geotag indicative of geographic coordinates where the respective digital photograph or video was taken, the method comprising:

displaying an application view on a video display device including displaying a plurality of selectable elements, the plurality of selectable elements including a location selectable element;

responsive to a click or tap of the location selectable element, displaying a map view on a video display device, the displaying the map view including displaying:

(i) a representation of an interactive map;

(ii) a first location selectable thumbnail image at a first location on the interactive map, the first location being associated with the geographic coordinates of a first geotag, a first set of digital photographs and videos including all of the digital photographs and videos associated with the first geotag;

(iii) a first count value image partially overlapping the first location selectable thumbnail image, the first count value image including a first number that corresponds to the number of digital photographs and videos in the first set of digital photographs and videos;

(iv) a second location selectable thumbnail image at a second location on the interactive map, the second location being associated with the geographic coordinates of a second geotag, a second set of digital photographs and videos including all of the digital photographs and videos associated with the second geotag; and

(v) a second count value image partially overlapping the second location selectable thumbnail image, the second count value image including a second number that corresponds to the number of digital photographs and videos in the second set of digital photographs and videos;

responsive to a click or tap of the first location selectable thumbnail image, displaying a first location view on the video display device, the displaying the first location view including displaying (i) a first location name associated with the first geotag and (ii) a scaled replica of each of the digital photographs and videos in the first set of digital photographs and videos, the displayed scaled replicas of each of the digital photographs and videos in the first set of digital photographs and videos not being overlaid on the interactive map; and

responsive to a click or tap of the second location selectable thumbnail image, displaying a second location view on the video display device, the displaying the second location view including displaying (i) a second location name corresponding to the second geotag and (ii) a scaled replica of each of the digital photographs and videos in the second set of digital photographs and videos, the displayed scaled replicas of each of the digital photographs and videos in the second set of digital photographs and videos not being overlaid on the interactive map.

# CERTIFICATE OF INTEREST

Counsel for Apple Inc. certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1.     **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc.

2.     **Real Parties in Interest.** Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

3.     **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

4.     **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

SIDLEY AUSTIN LLP: Jeffrey P. Kushan, Samuel A. Dillon, Kyle S. Smith, Thomas A. Broughan, III, Scott M. Border

5.     **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

Yes, see separately filed notice.

6.     **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

Dated:  September 26, 2024          /s/ Brian R. Matsui

          Brian R. Matsui

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF THE ISSUES ON CROSS-APPEAL ........................................1

STATEMENT OF THE CASE ON CROSS-APPEAL............................................1

SUMMARY OF ARGUMENT ................................................................2

STANDARD OF REVIEW ON CROSS-APPEAL ..................................................4

ARGUMENT ................................................................4

I.    THE BOARD ERRED BY FAILING TO RESOLVE THE PARTIES' DISPUTE OVER THE "SECOND MAP IMAGE" ('020 PATENT CLAIMS 13-16, 45-48) ......................................................4

      A.    None Of MemoryWeb's Responses Overcomes The Board's Error In Requiring More Than A Reasoned And Supported Explanation For Unpatentability ..........................................6

      B.    MemoryWeb's Request To Affirm By Adopting And Applying A New Construction On Appeal Should Be Rejected ........................13

II.   THE BOARD ERRED IN REJECTING OBVIOUSNESS BASED ON IMMATERIAL DISTINCTIONS ('376 PATENT CLAIMS 1-12)............17

      A.    The Board And MemoryWeb's Focus On The Placement Of An Intermediate Click Cannot Defeat Obviousness ................................17

            1.    MemoryWeb fails to dispute the key points compelling a conclusion of obviousness ......................................17

            2.    MemoryWeb attacks arguments Apple did not make about whether intermediate clicks are part of one view or another ................................................................19

            3.    MemoryWeb fails to rebut that nothing about obviousness here turns on which clicks would be eliminated......................20

4.    Although Apple's challenge compelled determining obviousness regardless, its reply permissibly elaborated the challenge ........................................................................ 22

B.    The Board's "Alternative" Reasons For Rejecting Apple's Obviousness Theory Cannot Support Affirmance ............................. 24

III.    THE BOARD EXPLAINED ITS FINDING THAT A3UM DISCLOSES CAUSING A DIGITAL FILE TO BE DISPLAYED RESPONSIVE TO AN INPUT ('228 PATENT CLAIM 15) ...................... 27

A.    The Board Correctly, And Reasonably, Resolved The Parties' Narrow Dispute On Claim 15 .................................................... 27

B.    MemoryWeb's Appeal Challenges Are Divorced From The Parties' Narrow Dispute At The Board, Which The Board Adequately Resolved ................................................................ 29

1.    The Board explained its reasoning on the disputed issue ......... 29

2.    The Board made no other errors ............................................ 31

3.    MemoryWeb's estoppel argument has no merit because Apple appealed the adverse Board findings on the '376 patent ........................................................................... 34

C.    Affirmance In *MemoryWeb v. Samsung* Will Moot MemoryWeb's '228 Appeal ...................................................... 35

IV.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT A3UM DISCLOSES A "FIRST PERSON VIEW" INCLUDING A "FIRST MAP IMAGE" ('020 PATENT CLAIMS 1-5, 8-12, 17-37, 40-44, 49-59) ........................................................ 36

A.    Substantial Evidence Supports The Board's Finding Of Disclosure Under Either Party's Claim Interpretation ...................... 36

B.    MemoryWeb's Challenges To The Board's Findings Fail ................. 39

1.    MemoryWeb cannot overcome the substantial evidence supporting the Board's finding .................................................. 39

2.    MemoryWeb's additional "claim construction" arguments are forfeited and wrong in any event ........................................ 41

V.    MEMORYWEB'S   PROCEDURAL    AND    SUBSTANTIVE
      ATTACKS ON THE BOARD'S FINDINGS OVERLOOK THE
      BOARD'S REASONING AND THE SUBSTANTIAL EVIDENCE
      SUPPORTING IT ('658 PATENT CLAIMS 3-4, 8-12) ...........................44

      A.    The Board Explained Its Reasoning And Made Supported
            Findings On Claims 3-4 ......................................................44

            1.    Substantial evidence supports the Board's finding that it
                  would have been obvious to modify A3UM to add claims
                  3 and 4's functionality ..............................................44

            2.    MemoryWeb's procedural challenges fail, as does its
                  substantive challenge to the extent it even makes one ............47

                  a.    MemoryWeb's attack on an obviousness theory the
                        Board did not adopt is immaterial and wrong ...............47

                  b.    MemoryWeb fails to show a lack of adequate
                        explanation, or support, for the Board's detailed and
                        well-supported findings .................................................52

      B.    MemoryWeb's Belated Attempt To Raise A New Construction
            For Claims 8-12 Fails ..........................................................56

            1.    The Board correctly found that A3UM disclosed or
                  suggested claims 8 and 11 .......................................56

            2.    MemoryWeb fails to show the Board erred in declining to
                  construe "responsive to" or apply it to these claims ................58

      C.    Affirmance  In  *MemoryWeb  v.  Samsung*  Will  Moot
            MemoryWeb's '658 Appeal ...............................................62

CONCLUSION ......................................................................................62

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alacritech, Inc. v. Intel Corp.*,
  966 F.3d 1367 (Fed. Cir. 2020) ........................................................31

*Anacor Pharms., Inc. v. Iancu*,
  889 F.3d 1372 (Fed. Cir. 2018) ........................................................32

*Apple Inc. v. Andrea Elecs. Corp.*,
  949 F.3d 697 (Fed. Cir. 2020) .........................................................24

*Arctic Cat v. Polaris Indus., Inc.*,
  795 F. App'x 827 (Fed. Cir. 2019) ..................................................26

*Axonics, Inc. v. Medtronic, Inc.*,
  73 F.4th 950 (Fed. Cir. 2023) ....................................................25, 26

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.*,
  616 F.3d 1249 (Fed. Cir. 2010) ........................................................16

*Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*,
  419 U.S. 281 (1974).............................................................................4

*CRFD Rsch., Inc. v. Matal*,
  876 F.3d 1330 (Fed. Cir. 2017) ..........................................................8

*Ericsson Inc. v. Intell. Ventures I LLC*,
  901 F.3d 1374 (Fed. Cir. 2018) ........................................................24

*Gillette Co. v. Energizer Holdings, Inc.*,
  405 F.3d 1367 (Fed. Cir. 2005) ........................................................16

*Henny Penny v. Frymaster*,
  938 F.3d 1324 (Fed. Cir. 2019) ........................................................26

*In re Huston*,
  308 F.3d 1267 (Fed. Cir. 2002) ....................................................4, 53

*Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*,
  869 F.3d 1336 (Fed. Cir. 2017) ........................................................18

*IOENGINE, LLC v. Ingenico Inc.*,
   100 F.4th 1395 (Fed. Cir. 2024) ....................................................41, 59

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
   97 F.4th 915 (Fed. Cir. 2024) ............................................................25

*In re Keller*,
   642 F.2d 413 (CCPA 1981) ................................................................55

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007).........................................................18, 29, 55

*In re Lee*,
   277 F.3d 1338 (Fed. Cir. 2002) ....................................................13, 14

*In re Magnum Oil Tools Int'l, Ltd.*,
   829 F.3d 1364 (Fed. Cir. 2016) ...........................................31, 32, 40

*MaxLinear, Inc. v. CF CRESPE LLC*,
   880 F.3d 1373 (Fed. Cir. 2018) ......................................... 35-36, 62

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373 (Fed. Cir. 2019) ........................................................13

*Netflix, Inc. v. DivX, LLC*,
   84 F.4th 1371 (Fed. Cir. 2023) ...........................................................9

*N. Telecom Ltd. v. Samsung Elecs. Co.*,
   215 F.3d 1281 (Fed. Cir. 2000) ................................................. 43-44

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*,
   868 F.3d 1013 (Fed. Cir. 2017) ........................................................37

*Novartis AG v. Torrent Pharm. Ltd.*,
   853 F.3d 1316 (Fed. Cir. 2017) ..........................................4, 30, 53, 54

*In re NuVasive, Inc.*,
   841 F.3d 966 (Fed. Cir. 2016) .........................................................30

*Paice LLC v. Ford Motor Co.*,
   881 F.3d 894 (Fed. Cir. 2018) .........................................................30

*Praxair Distrib., Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*,
890 F.3d 1024 (Fed. Cir. 2018) ..............................................................4

*Provisur Techs., Inc. v. Weber, Inc.*,
50 F.4th 117 (Fed. Cir. 2022) ................................................................8

*SAS Inst. Inc. v. Iancu*,
138 S. Ct. 1348 (2018).............................................................................6

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ......................................................52, 60

*Uniloc 2017 LLC v. Facebook, Inc.*,
No. 19-2159, 2021 WL 5370480 (Fed. Cir. Nov. 18, 2021).........8, 12

*XY, LLC v. Trans Ova Genetics, L.C.*,
890 F.3d 1282 (Fed. Cir. 2018) ......................................................36, 62

## Statutes

35 U.S.C. § 328(a) ......................................................................................6

## STATEMENT OF THE ISSUES ON CROSS-APPEAL

1.    On claim 15 of the '228 patent, whether to affirm the Board's express and clearly explained findings on the narrowly disputed issue before it, the substance of which MemoryWeb has not challenged (Part III, *infra*).

2.    On all claims of the '020 patent found unpatentable, whether to affirm because substantial evidence supports the Board's findings that A3UM discloses the claimed "first person view" including a "first map image" and because MemoryWeb's forfeited claim-construction argument is wrong (Part IV, *infra*).

3.a.    On claims 3-4 of the '658 patent, whether to affirm because the Board's reasoning is clear enough for judicial review and supported by substantial evidence (Part V.A, *infra*).

  b.    On claims 8-12 of the '658 patent, whether to affirm because MemoryWeb forfeited its claim-construction challenge by not pressing it at the Board, because the Board's decision stands independent of that construction, and because MemoryWeb's construction is wrong in any event (Part V.B, *infra*).

## STATEMENT OF THE CASE ON CROSS-APPEAL

Apple's opening brief laid out much of the background relevant here, including the prior art and the nature of the technology claimed across these closely related patents.  Apple.Br.4-18.  Additional background is addressed in the relevant portions of the argument section of this brief.

## SUMMARY OF ARGUMENT

In its response and cross-appeal, MemoryWeb never disputes that the technology it claims is straightforward and predictable. There is nothing in its claims but what is disclosed in the prior art, or trivial variations thereon. Not surprisingly, the related sets of claims have been invalidated in not one, but six, separate Board proceedings.

In the limited instances where the Board found claims not unpatentable here, it justified that conclusion by disregarding clear and supported arguments in Apple's petitions—arguments that MemoryWeb repeatedly recognized and responded to. For instance, the Board declined to decide Apple's "second map image" argument on which the parties joined issue. MemoryWeb now turns itself into knots by arguing both that Apple failed to raise these arguments and that the Board did address the merits. Both arguments are wrong. MemoryWeb also still does not dispute key elements that compel finding unpatentable the other claims challenged in Apple's appeal. And it concedes that the Board's conclusion of no motivation was based on unclaimed functionality that MemoryWeb itself did not even raise below. MemoryWeb cannot put the blame on Apple for not predicting the Board's *sua sponte* rationales.

On cross-appeal, MemoryWeb attempts to revive claims now twice-invalidated at the Board. If this Court affirms in MemoryWeb's parallel appeals on

the '228 and '658 patents involving Samsung, then MemoryWeb's cross-appeal arguments on those patents will be moot.

Regardless, the Court should also affirm on MemoryWeb's cross-appeal here. MemoryWeb reiterates an attack on disclosures of A3UM that the Board rightly explained are irrelevant, failing entirely to engage with the Board's reasoning about why MemoryWeb's arguments are immaterial to obviousness. MemoryWeb argues the Board did not explain itself when, in reality, the Board addressed every single argument MemoryWeb raised on these issues.

MemoryWeb next asks this Court to import a "responsive to" requirement from claim elements where that language is express into claim elements where it is plainly absent. These arguments fall flat too. Despite MemoryWeb's attempted recharacterization of its theories, it never sought at the Board the construction it seeks here. Rather, it merely challenged whether the prior art disclosed the challenged limitations—but the Board's contrary findings are supported by substantial evidence, and MemoryWeb fails to overcome those findings. And to the extent MemoryWeb preserved any claim-construction arguments, they improperly read in nonexistent limitations. This leaves the Court no option but to affirm on MemoryWeb's cross-appeal.

**STANDARD OF REVIEW ON CROSS-APPEAL**

Courts "will uphold a decision of less than ideal clarity" as long as "the agency's path may reasonably be discerned." *In re Huston*, 308 F.3d 1267, 1281 (Fed. Cir. 2002) (quoting *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)). The agency's explanation need only be "commensurate with" the presentation of the dispute before it. *Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1327-28 (Fed. Cir. 2017).

Claim construction is "a question of law that may involve underlying factual inquiries." *Praxair Distrib., Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018). This Court will "review the Board's claim construction based solely on intrinsic evidence de novo," and "subsidiary factual findings regarding extrinsic evidence for substantial evidence." *Id.*

**ARGUMENT**

I.   **THE BOARD ERRED BY FAILING TO RESOLVE THE PARTIES' DISPUTE OVER THE "SECOND MAP IMAGE" ('020 PATENT CLAIMS 13-16, 45-48)**

The disputed limitations of dependent claims 13-16 and 45-48 of the '020 patent are not complicated. Those claims all depend from claims that require displaying a "first person view" that includes "a first map image." Appx444 (col.35:17-31, col.36:22-46), Appx445-446 (col.37:56-col.38:24, col.39:9-32). The disputed limitations of claims 13-16 and 45-48 just require displaying a second of

the same: a "second person view" that includes "a second map image." Appx444 (col.36:22-46), Appx446 (col.39:9-32). Apple showed, and the Board found, that the independent claims requiring a "first person view" that includes "a first map image" would have been obvious given A3UM's teachings that selecting a person will display a view with images of that person and multiple map-related buttons. Appx53-59. Given the direct connection between the challenged claims' "first" and "second" limitations, Apple's petition relied on the same evidence for the "second" limitations:

> A3UM discloses providing the same functionality for each face identified by the system, including showing that person in Faces view, displaying their name within A3UM's overall user interface. Because A3UM discloses or renders obvious these features with respect to a "first person" (claim 1 and 31), A3UM discloses or renders obvious these features with respect to a "second person."

Appx747-748 (emphasis and citations omitted).

MemoryWeb's Board responses understood exactly what Apple meant, never once suggesting Apple's challenge lacked clarity. Appx1063-1066; Appx1237. MemoryWeb instead simply disputed the merits of Apple's unpatentability challenge, arguing Apple could not "rely[] on the exact same displayed element" for the first and second map images. Appx1063-1066; Appx1237. Yet even though the parties joined issue, the Board never decided the parties' dispute. As Apple explained, that was error—plain statutory text and clear precedent compelled the

5

Board to decide the substance of the parties' dispute. Apple.Br.21-31 (citing *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018); 35 U.S.C. § 328(a)).

MemoryWeb cannot escape these basic facts. Much of its appeal brief attacks arguments Apple did not make and avoids addressing what Apple raised. MemoryWeb.Br.33-43. MemoryWeb also tacitly acknowledges the flaws in the Board's decision by asking this Court to do the Board's job and address the substantive issues the Board wrongly refused to reach. MemoryWeb.Br.43-46. None of these arguments warrants affirmance.

### A.    None Of MemoryWeb's Responses Overcomes The Board's Error In Requiring More Than A Reasoned And Supported Explanation For Unpatentability

MemoryWeb cannot reasonably dispute that its Board papers fully understood Apple's challenge related to the "second map image." MemoryWeb asserts in passing in its brief's background that it previously "argued that Apple failed to address the 'second map image.'" MemoryWeb.Br.14 (citing Appx1064). But MemoryWeb told the Board the opposite, acknowledging Apple's petition asserted "that the additional limitations in claims 13 and 45, *including the 'second map image,'* are obvious '[b]ecause A3UM discloses or renders obvious these features with respect to a 'first person.''" Appx1064 (emphasis added; quoting petition at Appx747). MemoryWeb now suggests it was merely responding to Apple's expert, not Apple. MemoryWeb.Br.38-39. But MemoryWeb again told the Board the

6

opposite, that it was responding to what "Petitioner argues" on the "'second map image'" and what "Petitioner identifies" as "examples of a 'map image' in A3UM": MemoryWeb argued Apple's expert merely "confirmed" what the petition had shown for "both the first map image *and* the second map image." Appx1064-1065 (MemoryWeb's emphasis); Apple.Br.26 (explaining same).

None of MemoryWeb's arguments justifies its about-face or absolves the Board's error in not deciding the dispute over the "second map image." MemoryWeb repeatedly suggests the Board did address the substance of Apple's challenge because the Board upheld the claims in the final written decision and on rehearing by stating "the Petition resulted in 'a failure of proof.'" MemoryWeb.Br.34-35 (quoting Appx109). But what the Board described as "a failure of proof" was that the petition allegedly "'lacks any discussion of a second map image or how A3UM teaches or suggests this subject matter.'" Appx109 (quoting Appx83). All that means is that the Board cut short its analysis; it never addressed the parties' claim-construction dispute or determined whether the A3UM Places button was a "second map image" under either party's construction. Appx83-86; Appx106-109. MemoryWeb's blatant attempt to recharacterize the Board's decision as addressing the substance of the parties' dispute just highlights that the Board should have but never did so.

Apple identified numerous decisions confirming this principle. Apple.Br.22-31. The Board reversibly errs if it "does not substantively engage with" the petition's arguments, *Provisur Techs., Inc. v. Weber, Inc.*, 50 F.4th 117, 125 (Fed. Cir. 2022); or if it demands more than "an understandable explanation of the element-by-element specifics," which may be achieved "by direct citation" to other portions of a petition addressing the relevant disclosures, *Uniloc 2017 LLC v. Facebook, Inc.*, No. 19-2159, 2021 WL 5370480, at *8-9 (Fed. Cir. Nov. 18, 2021) ("understandable explanation" enough); *CRFD Rsch., Inc. v. Matal*, 876 F.3d 1330, 1346, 1349 (Fed. Cir. 2017) ("direct citation" to other petition sections enough).

MemoryWeb hardly responds to this precedent. MemoryWeb's only response to *CRFD* is its flawed assertion that the Board did decide the substance of the parties' dispute. MemoryWeb.Br.42-43. And on *Uniloc*, MemoryWeb argues this case differs because the Board "identified three possible arguments Apple's Petition could have, but did not, make" about how the same evidence shows both the first and second map images. MemoryWeb.Br.42 (citing Appx84; Appx112). Those "possible arguments" were that "the first and second map images" could "encompass a single instance" of the Places button, that each claimed map image could "encompass both instances (i.e., in the toolbar and the Library inspector)," or that "one map image corresponds to one instance." Appx83-84; Appx112. But as Apple explained and MemoryWeb never disputes, the Board's identification of those three

possibilities confirms the key point:  the Board understood that Apple's petition had pointed to the Places button—and only the Places button—for both the first and second map image limitations.    Apple.Br.28-29;   MemoryWeb.Br.35 (acknowledging all possibilities point to "the A3UM Places button").    That understanding contradicts the Board's and MemoryWeb's repeated assertions that Apple "did not identify anything for the second map image." MemoryWeb.Br.35-38; Appx83; Appx108-109.

Nothing about the Board's alleged "possibilities" makes this case like *Netflix, Inc. v. DivX, LLC*, on which MemoryWeb relies.  MemoryWeb.Br.35 (citing 84 F.4th 1371, 1380 (Fed. Cir. 2023)).  The problem in *Netflix* was that the petitioner invoked on appeal a new prior-art embodiment that its petition had not clearly identified as part of the relevant challenge, a challenge that the Board resolved on the merits.  84 F.4th at 1379-80.  No similar facts exist here given the Board's own recognition that Apple's petition simply relied on the Places button for both the first and second map images.  Appx83-84.  And the Board's "possibilities" about the Places button for both the first and second map image are all materially the same because they all involve two disclosures of a "map image," which is more than enough for obviousness of the simple limitations at issue here.

MemoryWeb also fails to overcome the other parts of the parties' Board papers that reinforce the clarity of Apple's challenge.  Apple.Br.25-27.  For example,

Apple's petition addressed claim 14 in a way that makes sense only because the petition had already identified the Places button as the second map image. Apple.Br.25-27.  Claim 14 specifically recites functionality of "the second map image":  that the interface must cause specific actions "responsive to" an input indicating selection of that map image.  Appx444 (col.36:29-39).  In addressing those requirements, Apple's petition expressly and unambiguously invoked its prior discussion of the "first map image" showing how A3UM discloses that functionality based on the Places button.  Appx748 (citing Appx721-722).  MemoryWeb responds by complaining that Apple's petition gave "a single sentence" on claim 14 that "is deficient for the same reasons" the Board found for claim 13.  MemoryWeb.Br.39 (citing Appx748).  Yet that response fails to rebut Apple's point—the petition's discussion of claim 14 presupposed that the Places button was the identified second map image.  Appx748.  Besides complaining of brevity, MemoryWeb never shows otherwise.

The Board erred for similar reasons in suggesting Apple's petition was unclear when it stated on claim 13 that A3UM discloses "providing the same functionality" for first and second persons, functionality that would include displaying map images for each.  Apple.Br.29-30 (citing Appx82-86).  MemoryWeb again just reproduces the Board's reasoning and baldly asserts "Apple does not explain how the Board erred."  MemoryWeb.Br.36-37.  But Apple did.  The Board believed that "the

'second map image' is not a function." Appx107-108; Appx82. Yet in the context of these method claims, the second map image is just as much a function as are the "second digital file" and the "second name," which the Board and MemoryWeb never dispute are encompassed within the petition's "same functionality" language. Appx444 (col.36:22-29); Apple.Br.29-30. Claims 13 and 45 require "causing a second person view to be displayed," the second person view including all three of the second digital file, name, and map image. Nothing in the claims supports treating the map image differently from the other two elements.

Rehashing another of the Board's points, one MemoryWeb itself never previously advanced, MemoryWeb argues Apple's petition was ambiguous in its treatment of the second map image because the petition "consistently treated the 'first' and 'second' limitations as distinct elements." MemoryWeb.Br.37-38 (citing Appx84). But that argument conflates whether the limitations are distinct—which all agree they are—with whether the same prior-art disclosure can satisfy both limitations, which is the claim-construction dispute the Board never resolved. Apple.Br.30-31 (explaining same). Because the Board never adopted a construction requiring separate prior-art disclosures for each map image, it had no basis to fault Apple for relying on the same prior-art disclosure for both. *See infra* Part I.B.

For similar reasons, MemoryWeb is wrong that "Apple takes contradictory positions" that depart from Apple's position at the Board. MemoryWeb.Br.38

(citing Apple.Br.28, 30).  There is no inconsistency between arguing that either or both instances of the Places button can satisfy either or both the first and second map image limitations and acknowledging that the limitations themselves are distinct, which is all Apple said.  Apple.Br.28, 30-31.  Apple took the same position at the Board.  Appx1305; Appx748.

Finally, MemoryWeb's argument that Apple's reply "presented 'an entirely new rationale'" just repackages its argument about the petition, which is wrong for all the reasons explained.  Plus, MemoryWeb forfeited the argument—it never once suggested to the Board that Apple's reply had presented a new rationale even though MemoryWeb got the last word at the Board.  Appx1237-1238.  MemoryWeb confirms it never raised the issue but argues it "had no reason to" because the reply did not "expressly articulate any theory."  MemoryWeb.Br.41.  In so arguing, MemoryWeb contradicts its own assertions about an alleged "new rationale" in the reply.  And it directly contradicts the Board's reasoning that Apple addressed the second map image "[f]or the first time[] in its Reply."  Appx84-85.  Regardless, that MemoryWeb itself never understood Apple's reply to be presenting a *new* theory proves Apple's point that the reply was at most "permissibly clarifying."  Apple.Br.26-27 (quoting *Uniloc*, 2021 WL 5370480, at *8-9).

The Board had no good reason for refusing to address Apple's clearly presented challenge that the Places button corresponds to the challenged claims'

second map image.  It thus abused any discretion it had on whether to address that issue.

### B.    MemoryWeb's Request To Affirm By Adopting And Applying A New Construction On Appeal Should Be Rejected

MemoryWeb alternatively asks the Court to construe "first" and "second" map images in the first instance, apply that construction in the first instance, and affirm.  That request for this Court to do the work the Board refused to do should be rejected.

*First*, MemoryWeb "conflat[es] de novo review with an independent analysis" by making claim-construction arguments that require a Board determination first.  *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380 (Fed. Cir. 2019).  De novo review is still *review*, which is why this Court is "generally hesitant to construe patent claims in the first instance."  *Id.* (collecting cases).  Instead of overcoming that reluctance, MemoryWeb confirms its claim-construction challenge is unsuitable for appeal resolution by relying on disputed expert testimony that the Board should resolve first.  MemoryWeb.Br.44-45 (citing Appx10585-10586; Appx10457); *In re Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) (rejecting alternative factual grounds on which "the court is powerless to affirm").

*Second*, MemoryWeb fails to show any construction is even necessary here, further underscoring that the Board should address the issue first.  MemoryWeb baldly asserts its construction is "case dispositive" and Apple "forfeited any

conceivable argument" otherwise. MemoryWeb.Br.46. But Apple's primary response when MemoryWeb pressed this issue at the Board was that claim construction was "unnecessary" because the prior art "describe[s] selectable map images," plural. Appx1304. And even assuming the "map images have to be different," "the presentation of the first map image is clearly making them different in A3UM." Appx1374. For instance, the petition showed it would have been obvious to modify A3UM so that selecting a Places button in a first person view would display photos of the first person with location information; similarly, selecting a Places button in a second person view would display photos of a second person. Appx733-736; Appx748-749; Appx1374. MemoryWeb is wrong that Apple's expert "admitted" differently—the expert said the same thing and merely reserved the right to further address obviousness "if necessary" under a construction requiring first and second map images "to visually look different." Appx10457-10458 (289:20-290:21). For this reason, too, MemoryWeb is wrong that claim construction presents an alternative basis to affirm; even under MemoryWeb's construction, a remand would be required for the Board to resolve the factual dispute over obviousness. *Lee*, 277 F.3d at 1345-46.

*Third*, MemoryWeb's construction is wrong. The claims require distinct "first" and "second" "person *views*"; so long as each distinct view includes a map image meeting all express claim limitations, nothing more is required. The claim

text says it all.  In the claimed methods, selections associated with "first" and "second" persons must cause display of "first" and "second" person views, respectively.  Appx444 (col.35:17-31, col.36:22-29).  Those views must include a "digital file associated with the" person, a "name associated with the" person, and a "map image."  Appx444 (col.35:17-31, col.36:22-29).  Unlike the digital file and name, there is no requirement that the map image within each view be associated with the person.  Appx444 (col.35:17-31, col.36:22-29).  The plain text thus requires distinct views, with person-specific digital files and names, but lacks any similar requirement for the map image.    Appx444 (col.35:17-31, col.36:22-29).  MemoryWeb's construction fails to give meaning to the text's distinction between person-view elements that are "associated with" a given person and those that are not.

MemoryWeb points to claims 14 and 46, arguing they recite another element—"*the* interactive geographic map"—without "first" or "second" modifiers, which supposedly shows "MemoryWeb knew how to claim the same element in multiple views."  MemoryWeb.Br.45 (emphasis added).  But the question is not whether the claims *require* using the same map image in multiple views; it's whether they *permit* doing so.

MemoryWeb is also wrong that giving the text its plain meaning would violate a "presumption" that separately recited elements "are distinct" or contradict some

15

"common[]" patent-law understanding of "first" and "second."  MemoryWeb.Br.44-45 (citing *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1373 (Fed. Cir. 2005); *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1254 (Fed. Cir. 2010)).  Under a plain-meaning construction, the "first" and "second" map images are distinct elements with distinct meanings in the sense that each is part of a different person view and provides different functionality.  Appx444 (col.35:17-31, col.36:22-39).  But nothing requires the images also to be visually distinct.

MemoryWeb points to no specification support.  Instead, it alleges Apple's expert "confirmed" the claims "should be construed as distinct map images." MemoryWeb.Br.44 (citing Appx989-990).  But Appx989-990 is MemoryWeb's brief to the Board, not Apple's expert.  And Apple's expert disagreed that ordinarily skilled artisans would understand the claim text as requiring distinct images, instead explaining that the claims would cover "the same icon which would have different effects depending on what person is selected."  Appx10457-10458 (289:20-290:1).

In the end, nothing MemoryWeb says contradicts the plain truth that before the Board issued its final written decision MemoryWeb knew perfectly well what Apple's challenge on the "second map image" was and responded to that challenge.  Congress in the governing statutes, and the Supreme Court and this Court in controlling precedent, thus required the Board to address the substance of that challenge.  The Board's failure to do so requires vacatur and a remand.

## II.   THE BOARD ERRED IN REJECTING OBVIOUSNESS BASED ON IMMATERIAL DISTINCTIONS ('376 PATENT CLAIMS 1-12)

### A.   The Board And MemoryWeb's Focus On The Placement Of An Intermediate Click Cannot Defeat Obviousness

#### 1.   *MemoryWeb fails to dispute the key points compelling a conclusion of obviousness*

The '376 patent, like the other challenged patents, travels well-trod ground in claiming yet more minor variations on existing interfaces for displaying digital images.  The dispute on these claims focuses on the requirement to display a map view with an interactive map that includes selectable thumbnail images; "responsive to a click or tap," of a thumbnail, the map view is replaced with a "location view" that includes scaled replicas of location-specific images and a "map image" showing the relevant location.   Appx516 (col.35:13-col.36:14).   MemoryWeb does not meaningfully dispute the key points of Apple's challenge showing that the only conclusion on this record is that such an interface would have been obvious (Apple.Br.32-37):

- A3UM discloses a Places view with an interactive map.  Appx2897-2898; Appx11547-11549.  Users can select pinned map locations to view small versions of associated images in the Browser.  Appx11556-11557.

- A3UM also discloses a Viewer pane that displays a large version of an image. Appx2482; Appx11559-11560.  That Viewer pane may be present, for example, in a Split view that also displays the Browser beneath the Viewer.   Appx2526, Appx2507; Appx11527-11528; Appx11560. Selecting a thumbnail in the Browser causes a larger version of the image to appear in the Viewer.  Appx2526, Appx2512, Appx2712.  Next to the

Viewer, users can open a Metadata Inspector with a Map Pane.  Appx2919; Appx11560-11561.

- To replace the interactive map in Places view with a large version of an image taken at a given location, a user would make multiple clicks:  first, select a location on the map; then, switch to the Split view.  Appx11559; Appx11562-11564.[1]

- Belitz discloses "in response to selecting a map marker, a 'popup window'" that includes "an image 'shown in a larger size.'" Appx11562-11564; Appx3587; Appx3593 (¶60).

- Modifying A3UM's teachings based on Belitz would make it so a single click on a map marker in Places view would display images in the Browser associated with the marker, automatically replace the interactive map with a larger image in the Viewer, and automatically display the Map Pane in the Inspector.  Appx11564-11566.  The result would be performing functionality that already exists in A3UM in fewer clicks.  Appx11564-11566.

These undisputed points alone show Apple presented a predictable combination of prior-art elements that compelled holding the challenged claims unpatentable.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007); *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1344 (Fed. Cir. 2017).

---

[1] MemoryWeb asserts without support that "A3UM does not disclose any click within the Places feature that replaces the map in the Viewer with a full-size image."  MemoryWeb.Br.56.  The Board disagreed, acknowledging Apple's showing that the manual discloses clicking an icon in the Places view toolbar. Appx162 (citing Appx2526); Appx11958-11959.

**2.    *MemoryWeb attacks arguments Apple did not make about whether intermediate clicks are part of one view or another***

Rather than respond to Apple's clear case of obviousness, MemoryWeb attacks arguments Apple never made.  According to MemoryWeb, the Board correctly upheld the challenged claims because Apple's obviousness challenge "relied on 'A3UM as disclosing' that selecting a thumbnail in the Browser replaces the map *in the Places view*."  MemoryWeb.Br.49-50 (emphasis added).  But, says MemoryWeb, A3UM discloses selecting a thumbnail to display an image in the Viewer only "*outside* of the Places view."  MemoryWeb.Br.50-51 (MemoryWeb's emphasis).

MemoryWeb misstates Apple's challenge.  Apple's discussion of selecting a thumbnail in the Browser was not about the Places view.  MemoryWeb's own quote from Apple's petition confirms this and disproves MemoryWeb's assertions that Apple "combin[ed] two steps associated with A3UM's Places view":

> Selecting a thumbnail in the Browser then prompts display of the original image in the Viewer.  EX1005, 251.  This display will be the digital image (e.g., a full-size photo) represented by the thumbnail in the Browser ("not including the interactive map").

(MemoryWeb.Br.48-49; quoting Appx152-153; Appx11559).  That quote never mentions the Places view.  It instead expressly cites EX1005, 251 (Appx2712), which is A3UM's discussion of the Split view, not the Places view.  Appx2711-2715.  Indeed, MemoryWeb omits the immediately following citation to page 51 of

19

EX1005 (A3UM at Appx2512), which similarly describes non-Places-view functionality. Appx2512. And MemoryWeb concedes the manual discloses the functionality Apple asserted outside the Places view. MemoryWeb.Br.50-51; Appx162 (Board finding same).

There is thus no merit to MemoryWeb's repeated insistence that Apple admitted to being "wrong about A3UM." MemoryWeb.Br.47, 48, 49, 62, 66, 67 (citing Apple.Br.38). Apple merely agreed "about how the Places view works," but expressly disagreed that Apple made "a contrary assertion." Apple.Br.38-39. Nor did Apple "argu[e] that it is irrelevant whether A3UM discloses the second step," meaning the step of clicking on a thumbnail in the browser to display an image in the viewer. MemoryWeb.Br.50 (citing Apple.Br.39). Apple instead explained— and MemoryWeb never contradicts—that the Board found A3UM discloses that step. Apple.Br.39 (citing Appx162; Appx2712). Simply, MemoryWeb's attacks on obviousness positions Apple did not and has not taken do nothing to undermine the clear case of obviousness Apple did advance.

### 3. *MemoryWeb fails to rebut that nothing about obviousness here turns on which clicks would be eliminated*

By attacking strawman arguments, MemoryWeb fails to contradict Apple's showing that the Board erred in upholding the claims for an immaterial reason based on where a user would make one of the intermediate clicks required in A3UM to transition from the interactive map to a full-size image in the Viewer. MemoryWeb

acknowledges that the whole point of Apple's proposed combination was "removing intermediate clicks." MemoryWeb.Br.58. Yet like the Board, MemoryWeb has no explanation for why *which* clicks are eliminated matters. Apple.Br.38-40 (explaining same). Instead, MemoryWeb repeatedly tries to turn Apple's appeal into a procedural challenge reviewed for an abuse of discretion. MemoryWeb.Br.46-59 (repeatedly invoking "abuse of discretion" standard). But Apple's core challenge is to the Board's legal conclusion on obviousness: even accepting the Board's finding about which clicks would be required in A3UM to replace the map with a large image in the Viewer, nothing about that finding undermines Apple's obviousness challenge based on eliminating those clicks.

In any event, for all the reasons explained the Board abused whatever discretion it possessed in reading Apple's challenge as based on which intermediate clicks a user makes to access certain functionality. MemoryWeb repeats the Board's theory that Apple's challenge depended on the placement of intermediate clicks because the petition stated certain functionality "would be '*retained*'" in the proposed combination. MemoryWeb.Br.50 (citation omitted; MemoryWeb's emphasis); Appx11559-11560. But Apple addressed that theory—the petition identified the retained "functionality" as "displaying an image" in the Viewer, which would be achieved "automatically," without intermediate clicks. Appx11564. Besides repeating the Board's flawed reasoning, MemoryWeb never responds. And

MemoryWeb never addresses the numerous petition statements clarifying that Apple's challenge involved modifying disclosures from A3UM, such as that "it would have been obvious *to modify* A3UM to combine these two steps." Appx11562-11564 (emphasis added); Apple.Br.39-40 (discussing others).

MemoryWeb also concedes, by silently avoiding, the Board's error in searching for motivation to combine "multiple embodiments"—the manual describes views of a single product, and the Petition addressed modifying how a user navigates between them. Apple.Br.40; Appx158. And although MemoryWeb parrots the Board's demand for a "reason for combining" features from "the Places view" and "the Viewer-Browser" (MemoryWeb.Br.51, quoting Appx159), MemoryWeb again ignores and does not rebut Apple's showing that the petition expressly gave reasons for its proposed modification: to "improve the user experience, such as by reducing the number of steps." Apple.Br.40 (quoting Appx11562-11564).

### 4. *Although Apple's challenge compelled determining obviousness regardless, its reply permissibly elaborated the challenge*

Apple also showed its obviousness challenge stands irrespective of the additional explanations in Apple's Board reply and, in any event, the Board erred in excluding those explanations. Apple.Br.41-42.

MemoryWeb addresses only the second point, protesting at length that although Apple "relied on the same prior art as the Petition," Apple "change[d] its theory to obviousness" after previously "argu[ing] a feature is disclosed." MemoryWeb.Br.51-54.  But Apple changed no theory.  It relied on the exact same parts of A3UM and Belitz in its reply and petition, not just the same art generally.[2] And Apple's petition and reply both showed that the references disclose the claimed features *and* that combining those features as claimed would have been obvious. Both relied on A3UM's Places view for the "interactive map."  Appx11547; Appx11956.  Both relied on the A3UM interface with the Viewer pane open as the interface "not including the interactive map."  Appx11559; Appx11956-11957. Both argued it would have been obvious to automatically display the Viewer upon clicking a map marker.  Appx11562; Appx11958.  And both argued this would have been obvious because it would involve implementing in A3UM Belitz's teaching of selecting a map marker to open "an image 'shown in a larger size.'"  Appx11563; Appx11961.  Relying "on the same" prior-art disclosures "from the same prior art reference[s] to support the same legal argument" is what petitioners are supposed to

---

[2] *Compare* Appx11956-11959 (citing Appx2491, Appx2512, Appx2514, Appx2526, Appx2712, Appx2897-2898, Appx2919-2920), *with* Appx11559-11564 (citing, *e.g.*, Appx2491, Appx2512, Appx2712, Appx2897-2898, Appx2919-2920), Appx11527-11528 (citing, *e.g.*, Appx2491, Appx2512, Appx2514, Appx2526, Appx2897-2898, Appx2919-2920), *and* Appx11547-11549 (citing, *e.g.*, Appx2491, Appx2526, Appx2897-2898, Appx2919-2920).

do, not grounds for exclusion.  *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 706-07 (Fed. Cir. 2020).

MemoryWeb is wrong to distinguish *Andrea* because the reply there "squarely respond[ed] to" the patentee.  *Id.*; MemoryWeb.Br.53.  As Apple explained, and MemoryWeb overlooks, the same is true here:  "Apple permissibly 'expanded'" on its petition to address MemoryWeb's contentions.  Apple.Br.41-42 (quoting *Ericsson Inc. v. Intell. Ventures I LLC*, 901 F.3d 1374, 1380-81 (Fed. Cir. 2018)); Appx11956-11958 (responding to what "[p]atentee contends").  The Board never concluded otherwise.  Appx160.  Nor is *Ericsson* limited to cases where the claim-construction standards changed from broadest reasonable interpretation to the *Phillips* standard.  *Contra* MemoryWeb.Br.41-42.  Those "special" facts on claim construction went to *the Board*'s changed approach.  *Ericsson*, 901 F.3d at 1380-81.  But the Court held that the petitioner made no change at all because it "cite[d] no new evidence and merely expand[ed] on a previously argued rationale."  *Id.*  The same facts here require the same conclusion.

## B.    The Board's "Alternative" Reasons For Rejecting Apple's Obviousness Theory Cannot Support Affirmance

Although the Board purported to offer reasons for upholding the claims "[e]ven assuming" Apple's challenge was based on combining features from the Places and other A3UM views (Appx161-164), Apple showed those reasons are not an independent basis to affirm at least because they relied on the same errors as the

Board's primary rationale.  Apple.Br.43-44.  MemoryWeb concedes the point—it acknowledges Apple's assertion and responds by contesting whether the Board erred in its primary rationale.  MemoryWeb.Br.56.  Hence, rejecting the Board's primary rationale for the reasons in Part II.A, *supra*, alone requires vacating and remanding the Board's purported alternative reasoning.

Regardless, Apple showed the Board's additional reasoning was itself reversible error.  For one, the Board wrongly demanded evidence for "combining different embodiments" when there is only one embodiment here.  Apple.Br.43-44.  MemoryWeb again remains silent on this error.  MemoryWeb.54-59.  The Board also erred legally and factually in relying on features that would supposedly be lost in the proposed combination.  Apple.Br.44-47.  MemoryWeb never disputes that none of the allegedly lost features is claimed, which shows the Board erred in adding unclaimed limitations and failing to tether its obviousness analysis to the claims' objective reach.  Apple.Br.44-47 (citing *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950, 957 (Fed. Cir. 2023)); *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 97 F.4th 915, 925-27 (Fed. Cir. 2024) (rejecting obviousness analysis focused on "unclaimed" features).

MemoryWeb argues the Board did not "unduly narrow the scope of the relevant prior art" or confine it to "a specific use case not required by the claims" as in *Axionics*.  MemoryWeb.Br.57.  But that is what the Board did.  It took a rigid

view of how A3UM's teachings could be used and held a skilled artisan would not apply those teachings without including features like "the user manually assign[ing] locations to images by selecting them in the Browser and then interacting with the map shown in Places view" or "selecting the image in the Places-view Browser [to] cause[] a location label to appear above a pin on the map." Appx162. The Board thus did not simply "'weigh the benefits and drawbacks of the proposed modification,'" as MemoryWeb suggests. MemoryWeb.Br.57-58 (quoting *Arctic Cat v. Polaris Indus., Inc.*, 795 F. App'x 827, 833 (Fed. Cir. 2019); *Henny Penny v. Frymaster*, 938 F.3d 1324, 1332 (Fed. Cir. 2019); brackets omitted). It improperly decided "whether a relevant artisan would combine a first reference's feature with a second reference's feature to meet requirements of the first reference that are not requirements of the claims." *Axonics*, 73 F.4th at 956-57.

Even so, the Board erred on the facts, too, by reaching unsupported conclusions. Apple.Br.45-47. MemoryWeb just repeats the Board's conclusions without addressing Apple's evidence showing the lack of support. MemoryWeb.Br.54-56. At most, MemoryWeb argues "Apple never disputed that its proposed modification would result in disadvantages" and Apple's allegedly new "appellate arguments cannot cure this deficiency." MemoryWeb.55-58. But those assertions fail because, as Apple explained and MemoryWeb never contests, the alleged disadvantages the Board identified were new issues the Board *sua sponte*

raised in its final written decision.   Apple.Br.47; MemoryWeb.Br.54-59 (never contesting).

Regardless, Apple also disputed that its proposed modifications would result in disadvantages and specifically identified where Apple's petition made those same points.      Apple.Br.46   (citing   Appx11547,   Appx11554-11556,   Appx11561, Appx11564-11566, Appx11568).   And when MemoryWeb addresses what Apple said, it misstates Apple's position:   MemoryWeb purports to quote Apple as "acknowledg[ing] that its proposed modification 'would remove, or "require additional steps."'"   MemoryWeb.Br.57 (quoting Apple.Br.45).   In the quoted sentence, Apple merely stated that "the Board reasoned that Apple's proposed combination was insufficient because it would remove, or 'require additional steps.'" Apple.Br.45 (quoting Appx162-163).   Apple then showed how "the record contradicts the Board's rationale."  Apple.Br.45.  MemoryWeb's failure to address that record confirms the Board erred.

## III.   THE BOARD EXPLAINED ITS FINDING THAT A3UM DISCLOSES CAUSING A DIGITAL FILE TO BE DISPLAYED RESPONSIVE TO AN INPUT ('228 PATENT CLAIM 15)

### A.   The Board Correctly, And Reasonably, Resolved The Parties' Narrow Dispute On Claim 15

Claim 15 of the '228 patent recites a basic requirement:   where claim 1 requires causing a view to be displayed that includes a representation of part of a digital file, claim 15 requires causing display of that digital file.   Appx590-591

(col.35:32-60, col.37:1-10). As the Board recognized, Apple's challenge to that basic functionality was straightforward—A3UM discloses multiple views in which image thumbnails ("representations of" a "digital file") are displayed in the Browser. Appx263 (citing Appx2512, Appx2712, Appx2897-2898); Appx21908-21909 (petition discussing same). The manual also discloses functionality in which "'[s]electing images in the Browser'" causes display of "'a detailed view of [the] selection'" in the Viewer. Appx263-264 (quoting Appx2712; also citing Appx2512; Appx23919-23920 (¶241)); Appx21908-21909. Apple showed that ordinarily skilled artisans would have included this simple way to open a full image in the proposed combination. Appx263-264 (Board noting same, citing Appx21908-21909; Appx23920 (¶242)).

MemoryWeb disputed almost none of this at the Board. It acknowledged A3UM discloses multiple views with thumbnails in the Browser and describes functionality where selecting a thumbnail causes the Viewer to display a full-size image. Appx22181-22186. Given the strength of the manual's disclosures, MemoryWeb raised only a single, narrow challenge—that claim 15 was purportedly patentable because "A3UM does *not* disclose that Places map is replaced with an image in response to selected [*sic*] an image in the Browser" and modifying the manual to include that functionality would not have been obvious. Appx22238-22243 (MemoryWeb's emphasis); Appx22389-22393 (same). That is, MemoryWeb

repeated the identical challenge it raised on claims of the '376 patent addressed *supra* about whether it would have been obvious in the Places view to use a single click to replace the map with a full-size image.

The record amply supports the Board's unpatentability finding given the parties' narrow dispute. As the Board explained, MemoryWeb's purported distinction over the prior art was untethered from any claim requirement. Appx265-266. Claim 15 of the '228 patent nowhere "recite[s] a requirement to 'replace the map with a full-size version of the image.'" Appx265-266. The claim requires merely that "the digital file is displayed *on the interface*." Appx266 (Board's emphasis). The claim text backs that up. Unlike the '376 patent's claims, which require certain elements to "not be[] overlaid on the first map image," the '228 patent's claims merely require causing a digital file to be displayed. *Compare* Appx516 (col.35:13-col.36:14), *with* Appx591 (col.37:1-10). And obviousness depends only on the claims' "objective reach." *KSR*, 550 U.S. at 419.

## B. MemoryWeb's Appeal Challenges Are Divorced From The Parties' Narrow Dispute At The Board, Which The Board Adequately Resolved

### 1. The Board explained its reasoning on the disputed issue

MemoryWeb's main challenge is that the Board violated the Administrative Procedure Act by failing to explain its reasoning. MemoryWeb.Br.60-65. That challenge has no basis on the facts here.

The APA requires reasoned analysis on only disputed matters; the Board is "not required to address undisputed" issues. *In re NuVasive, Inc.*, 841 F.3d 966, 974-75 (Fed. Cir. 2016). And that required reasoned analysis need be only "commensurate with" the presentation of the dispute at the Board. *Novartis*, 853 F.3d at 1327-28. Even a brief explanation suffices when "the technology is simple" and "familiar" from related proceedings. *Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 905 (Fed. Cir. 2018).

The Board's explanation here was not brief. It gave detailed reasoning commensurate with MemoryWeb's limited dispute over claim 15. MemoryWeb's patent owner response raised only one challenge to Apple's showing on claim 15: whether A3UM discloses using a single click in the Places view browser to replace the map with an image in the Viewer and whether such functionality would have been obvious. Appx22238-22243. But as already shown, the Board explained why claim 15 is unpatentable despite that challenge—claim 15 does not require an image in the Viewer to replace the interactive map after a single click in the Places browser. Appx265-266. There thus was no "connection between Patent Owner's contentions" and "the language of claim 15." Appx265. That explanation was more than adequate, particularly given the simple and familiar interface technology here. *Paice*, 881 F.3d at 905.

MemoryWeb cites *Alacritech, Inc. v. Intel Corp.*, which only highlights the adequacy of the Board's decision here.   MemoryWeb.Br.60-61 (citing 966 F.3d 1367, 1371-73 (Fed. Cir. 2020)).   "The crux of the dispute" in *Alacritech* was *where* a specific network operation (reassembly) took place in the prior-art apparatus and how that compared to the claimed apparatus.   966 F.3d at 1371.   The Board erred by focusing just on whether the prior art performed the network operation—a teaching "[n]o party disputed"—without addressing the dispute about *where* the operation occurs.   *Id.*   No similar failing occurred here.   Unlike in *Alacritech*, the Board here focused on the actually disputed issue and explained its resolution of that dispute. Appx265-266.   No more was required.

## 2.    *The Board made no other errors*

Acknowledging that the Board's decision contains reasoning, MemoryWeb tries to recast that reasoning as the Board improperly shifting the burden to MemoryWeb.   MemoryWeb.Br.61-62 (citing *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364 (Fed. Cir. 2016)).   But the Board expressly stated that "*Petitioner* has demonstrated that the asserted prior art meets the recited limitations."   Appx266 (emphasis added).[3]   And it held Apple to that burden:   the Board addressed the parties' narrow dispute and rejected MemoryWeb's arguments.   Appx266).   Merely

---

[3]   The Board's conclusion on claim 15 has a typographical error stating "dependent claims 8 and 9" rather than dependent claim 15.

deciding the contested issue in no way suggests the Board shifted any burden to MemoryWeb. *Anacor Pharms., Inc. v. Iancu*, 889 F.3d 1372, 1382 (Fed. Cir. 2018) (rejecting similar argument). That makes this case nothing like *Magnum Oil*, where the Board expressly shifted "the burden of production" to the patentee after institution. 829 F.3d at 1375-78.

Trying a different tack, MemoryWeb argues the Board misunderstood its argument. MemoryWeb.Br.62-63. According to MemoryWeb, it raised the issue of whether A3UM discloses replacing a map with a full-size image only because "Apple's petition relied on it to challenge claim 15." MemoryWeb.Br.62-63. But the Board discussed at length the parties' dispute about whether Apple's obviousness challenge relied on A3UM to disclose opening the Viewer with a single or multiple clicks on the Places view browser, and the Board ultimately sided with Apple. Appx264-266. The Board simply concluded that fight did not matter to claim 15's obviousness because it was untethered from any claim requirement. Appx265-266. In addition to the reasoning already discussed, the Board further found no difference between A3UM's disclosures and claim 15 because nothing in the claim excludes multiple user clicks causing display of a digital file; that is, nothing excludes "a related user action between the 'input that is indicative of a selection,'" and "causing a … digital file to be displayed on the interface." Appx266; *see* Appx22474-22475 (Apple citing petition and explaining same). Thus, whether or not A3UM disclosed

opening the Viewer with a single or multiple clicks made no difference to Apple's obviousness case; either way A3UM disclosed all claim 15 required. Appx265-266.

For similar reasons, MemoryWeb misplaces reliance on the Board's decision in the '376 patent proceeding. MemoryWeb.Br.62. MemoryWeb ignores the differences between the challenged claims, including that the '376 patent's claims require a display "not including the interactive map," the very thing the Board noted claim 15 of the '228 patent does *not* require. *Compare* Appx516 (col.35:51-65), *with* Appx265-266.

Finally, MemoryWeb makes three curt, one-sentence arguments for vacatur because the Board allegedly erred in "constru[ing] the phrase responsive to" as permitting "'a related user action.'" MemoryWeb.Br.64 (citation omitted). But the Board adopted no construction of "responsive to." Appx203-204. MemoryWeb acknowledges as much by stating the Board "seemingly construed" the phrase at Appx266. MemoryWeb.Br.64. The Board applied the claim's plain text and disagreed with *MemoryWeb* that the plain text "would necessarily prohibit a related user action." Appx265-266 (citing Appx22391-22392). MemoryWeb thus is wrong that the Board needed to address whether "Apple's claim construction proposal" was "improper." MemoryWeb.Br.64. Apple never proposed a construction. It made a fact-based argument based on what MemoryWeb's expert conceded about "responsive to." Appx22298-22299. Because the Board adopted no construction

and Apple never proposed one, the Board had no obligation to do more "claim construction analysis." *Contra* MemoryWeb.Br.64. MemoryWeb itself told the Board a construction "was not necessary" and offered no meaningful analysis. Appx22392-22393 (citing just one specification example that never mentions "responsive to"). Given the limited space MemoryWeb dedicated to the issue, the Board's explanation sufficed. And although MemoryWeb again complains of an alleged lack of findings that A3UM and Belitz disclose what claim 15 recites, that is wrong for all the reasons already discussed above. *Supra* Part III.B.1.

### 3.    *MemoryWeb's estoppel argument has no merit because Apple appealed the adverse Board findings on the '376 patent*

As a last resort, MemoryWeb manufactures an issue preclusion argument. MemoryWeb.Br.65-67. According to MemoryWeb, "the Board's findings in the '376 Patent proceeding that Apple does not appeal are now final and have preclusive effect," which somehow resolves MemoryWeb's appeal on the '228 patent. MemoryWeb.Br.65.

But that argument never gets off the ground because Apple appealed all adverse findings on the '376 patent. *See supra* Part II. Apple's entire appeal on that patent is about the issue on which MemoryWeb seeks to invoke preclusion— whether "Apple's argument" for unpatentability "was based on the same factual assertion" about whether "A3UM does *not* disclose replacing the Places map with a full-size image." MemoryWeb.Br.65-67 (MemoryWeb's emphasis); *supra* Part II.

34

As discussed at length in Part II, *supra*, Apple never based its challenge to the '376 patent on the assertion MemoryWeb imagines about the Places view; Apple explained the same thing to the Board for the claims of the '228 patent.  Appx22472-22475.  MemoryWeb is simply wrong that Apple has not appealed any adverse determination that would affect '228 patent claim 15.

Nor is preclusion an alternative ground, as MemoryWeb suggests.  On the contrary, the Board's independent finding that MemoryWeb's arguments on claim 15 were divorced from any claim requirement stand regardless of MemoryWeb's mistaken preclusion argument.  Thus, there is no need for the Court to address this issue if it affirms for the reasons given in Part III.A, *supra*.

## C.    Affirmance In *MemoryWeb v. Samsung* Will Moot MemoryWeb's '228 Appeal

The Board invalidated claims 1-17 of the '228 patent in *Samsung Electronics v. MemoryWeb*, IPR2022-00222 (P.T.A.B. Dec. 8, 2023) (redacted final written decision filed as Ex.2121).  MemoryWeb appealed the Board's determination on all claims, and that appeal (consolidated with appeal of the '658 patent), remains pending before this Court as *MemoryWeb, LLC v. Samsung Electronics Co., Ltd.*, No. 24-1315 (Fed. Cir.).  If the Court affirms the Board's invalidation of Claim 15 of the '228 patent in *Samsung*, then there will be nothing left to resolve in this '228 appeal.  *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018) (a separate Board determination of unpatentability, affirmed on appeal, "finally

resolved the issue of the unpatentability of" same claims in parallel IPR appeal).  The

Court should, in that situation, dismiss this '228 appeal as moot.  *XY, LLC v. Trans*

*Ova Genetics, L.C.*, 890 F.3d 1282, 1295 (Fed. Cir. 2018).

## IV.  SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT A3UM DISCLOSES A "FIRST PERSON VIEW" INCLUDING A "FIRST MAP IMAGE" ('020 PATENT CLAIMS 1-5, 8-12, 17-37, 40-44, 49-59)

On these claims of the '020 patent, MemoryWeb challenges only the Board's

finding that A3UM discloses a "first map image."  MemoryWeb argues the Board's

finding lacks substantial-evidence support and that the Board misconstrued

MemoryWeb's claim-construction position.  Those arguments either are forfeited,

fail, or both.

### A.  Substantial Evidence Supports The Board's Finding Of Disclosure Under Either Party's Claim Interpretation

The challenged independent claims recite, in relevant part, "responsive to an

input … causing a first person view to be displayed on the interface, the first person

view including … a first map image."  Appx444 (col.35:25-31), Appx445

(col.37:63-col.38:3).  At the Board, the parties disputed the type of causal

relationship required by the term "responsive to":  specifically, whether the term

permitted intervening user actions (as Apple argued), or whether it precluded them

(as MemoryWeb argued).  The Board concluded it did not have to resolve that

dispute because A3UM discloses the claimed "first map image" even under

36

MemoryWeb's narrower construction of "responsive to." *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (construction of disputed term is required only to if necessary to resolve a controversy). Ample evidence supports that finding.

The Board looked to A3UM and found it "describes a cause-effect relationship between" a user "input and the display of" a first person view, without any intervening user action required. Appx56 (citing Appx2880). Specifically, "A3UM teaches that double clicking a photo in the Faces view ('an input') will display a view" that contains "images" of a particular person, a "toolbar," and "inspector panes." Appx56 (citing Appx2880). That view is the same as the claimed first person view. Appx53, Appx56 (citing Appx713-714). The "inspector panes" and "toolbar" portions of that view, in turn, contain two instances of the claimed first map image: a Places button with a map icon in the "inspector pane," and a Places button with a map icon in the toolbar (also referred to below as the "Places link"). Appx58 (citing Appx1035). In reaching this conclusion, the Board relied on screenshots from A3UM, including MemoryWeb's own annotations of one of those screenshots making clear that the first person view includes the Places buttons:





Appx58 (citing Appx1035), Appx53 (citing Appx715); *see* Appx2540-2541, Appx2879-2880.

The Board also expressly "credit[ed]" the testimony of Apple's expert Dr. Terveen. Appx56 (citing Appx2342-2343 (¶¶120-122)). As Dr. Terveen explained, "selecting a user's snapshot will display the confirmed and unconfirmed thumbnails of images containing that person's face within A3UM's interface, including the Viewer, the toolbar, and the inspector panes"—and "[f]rom that view, A3UM

displays" both Places buttons. Appx2345. And the Board credited Dr. Terveen's explanation that a skilled artisan would consider both Places buttons to be first map images. Appx54 (citing Appx2344-2345 (¶123)). MemoryWeb does not challenge that finding on appeal.

### B.    MemoryWeb's Challenges To The Board's Findings Fail

#### 1.    *MemoryWeb cannot overcome the substantial evidence supporting the Board's finding*

MemoryWeb contends that no substantial evidence supports the Board's finding. MemoryWeb.Br.79. But as explained above, the Board relied heavily on A3UM's plain disclosures, including MemoryWeb's own annotations of A3UM's images, and on Dr. Terveen's opinions. *Supra* Part IV.A. In response, MemoryWeb says Dr. Terveen never opined on the meaning of "responsive to." MemoryWeb.Br.79. But no part of the Board's finding—and no part of Dr. Terveen's opinion on which the Board relied—turned on which party's interpretation of "responsive to" was correct, because the dispute over additional intervening steps was irrelevant to the Board's obviousness determination. Appx56-59; Appx2341-2345 (¶¶119-124).

Nor did the Board improperly supply arguments on Apple's behalf in reaching this conclusion. *Contra* MemoryWeb.Br.81. Instead, the Board expressly cited Apple's petition and the supporting evidence that petition cited, including Dr. Terveen's testimony and portions of A3UM. Appx56-58 (citing Appx713-721;

Appx2342-2343 (¶¶120-22); Appx2540-2541). That makes this case nothing like *Magnum Oil*, where the Board "raise[d], address[ed], and decide[d] unpatentability theories never presented by the petitioner"—there, an entire obviousness argument the petitioner had not raised—that was "not supported by record evidence." 829 F.3d at 1381. MemoryWeb had a full opportunity to rebut Apple's obviousness challenge on this ground, which Apple actually raised. Appx984-990; Appx1036-1042; Appx1222-1224 (MemoryWeb's arguments to the Board about the meaning of "responsive to" and why that limitation was not satisfied).

Unable to overcome this evidence, MemoryWeb instead makes arguments that are divorced from the construction of "responsive to" it advanced at the Board. For example, MemoryWeb challenges the Board's finding by arguing there "is no cause-effect relationship between the alleged input and displaying the alleged map images." MemoryWeb.Br.80-81 (arguing that the toolbar and inspector panes that contain the first map images are "always displayed by default"). But MemoryWeb proposed a construction that required only "a cause-effect relationship between (i) an input that is indicative of a selection associated with the first person and (ii) causing *a first person view* to be displayed on the interface." Appx984 (emphasis added). That is exactly what the Board found disclosed. *Supra* Part IV.A.

### 2. MemoryWeb's additional "claim construction" arguments are forfeited and wrong in any event

MemoryWeb also attacks the Board's purported "interpretation of the first person view limitations." MemoryWeb.Br.78. But MemoryWeb never asked for a claim construction of the "first person view" limitation. Its only claim-construction argument remotely relevant to the issues here was its request to construe "responsive to an input" as requiring a "cause-effect relationship" between an input selection and displaying "a first person view." Appx983-994. The Board applied that construction, so there is no contrary construction to review.

MemoryWeb now asks the Court to read in a requirement that "the first map image must be displayed responsive to the input." MemoryWeb.Br.77. But MemoryWeb "forfeited its proposed claim construction by not presenting it to the Board." *IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395, 1402 (Fed. Cir. 2024). Rather than request a claim construction requiring the first map image to also be displayed "responsive to" the input, MemoryWeb instead argued the issue to the Board only as a question of fact: whether the identified "first person view"— A3UM's Faces view—met the requirement to be displayed "responsive to" an input because the Places button within that view is "displayed by default." Appx1036-1041.

The Board followed suit and treated the issue as factual. As MemoryWeb concedes, the Board made a "*finding*" that the Places buttons that are displayed in

the Faces view, as well as in other views, met the claims' requirement for a first map image included in a first person view. MemoryWeb.Br.77, 79 (emphasis added); Appx54-56. The Board found no difference between A3UM's disclosed Places button and the claimed first map image because nothing in the claims (under either party's proposed construction) required the first map image to be included *exclusively* within the first person view. Rather, the claim text made clear that "additional unrecited views may also contain a map image." Appx54-56 (noting claim 1 begins with phrase "comprising"). Thus, in the portion of the Board's analysis that MemoryWeb challenges, the Board merely compared the prior art to the claims' plain text. Appx53-56 (canvassing A3UM's teachings about user inputs, the first person view, and the two first map images contained in that view). Because MemoryWeb never requested the claim construction it now seeks, it has no basis to fault the Board for purportedly "confus[ing] MemoryWeb's straightforward claim construction." MemoryWeb.Br.77-78.

Even were this issue one of claim construction, and even had MemoryWeb preserved a construction challenge, that challenge would fail because the plain language of the claims requires no causal relationship between the user input and the "first map image." Again, claim 1 recites "*responsive to* an input … causing a first person view to be displayed on the interface, *the first person view including* … a first map image." Appx444 (col.35:25-31) (emphases added). As the Board

42

explained and MemoryWeb's actual proposed construction recognized, that language imposes a causal relationship only between the user input and the "first person view." Appx54; Appx984-988. The first map view, by contrast, need only be "includ[ed]" in the first person view. Appx55. Thus, "the claim is satisfied" so long as "the first person view contains the map view, along with the other recited elements." Appx55. And, as MemoryWeb never disputes, A3UM's first person view does contain a first map image. *Supra* Part IV.A; Appx53-59.

MemoryWeb nevertheless argues that because (1) the first person view must be displayed responsive to user input; and (2) the first person view must contain the first map image; (3) the first map image also must necessarily be displayed responsive to user input. MemoryWeb.Br.76; *see* MemoryWeb.Br.75 (making identical argument on '658 patent). But MemoryWeb identifies zero support for its assertion about what persons of skill would understand to be "necessarily" required for an interface to be displayed "responsive to" input. MemoryWeb cites no intrinsic evidence showing that the patentees adopted or applied such a meaning nor any extrinsic evidence showing persons of ordinary skill in the art would so understand the claims. MemoryWeb.Br.76. It simply asks this Court to take MemoryWeb's word for it. MemoryWeb.Br.76. But as the Board explained, MemoryWeb's argument would "add[] an unrecited limitation to the claim." Appx55. And "[t]his court has repeatedly and clearly held that it will not read unstated limitations into

claim language." *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) (collecting cases).

Indeed, MemoryWeb has admitted elsewhere in this appeal that its position is contrary to the plain text of the '020 patent claims. In challenging the Board's conclusion as to certain claims in the '658 patent (*see infra* Part V.B), MemoryWeb asserted that if a "person view" that was responsive to user input "'further includes' a person-location selectable element," that location selectable element would not itself need to be "responsive to" that user input. MemoryWeb.Br.74. Claim 1 of the '020 patent has precisely that language. Appx444 (col.35:25-31).

## V. MEMORYWEB'S PROCEDURAL AND SUBSTANTIVE ATTACKS ON THE BOARD'S FINDINGS OVERLOOK THE BOARD'S REASONING AND THE SUBSTANTIAL EVIDENCE SUPPORTING IT ('658 PATENT CLAIMS 3-4, 8-12)

The Board correctly found all claims of the '658 patent would have been obvious. On appeal, MemoryWeb raises two challenges to two sets of dependent claims: claims 3-4 and claims 8-12. Both fail.

### A. The Board Explained Its Reasoning And Made Supported Findings On Claims 3-4

#### 1. *Substantial evidence supports the Board's finding that it would have been obvious to modify A3UM to add claims 3 and 4's functionality*

For dependent claims 3 and 4, MemoryWeb challenges only a straightforward requirement. Those claims depend from claim 1, which recites a method of

displaying digital photos and/or videos using various views, including location views with "scaled replica[s]" of photos and videos that have geotags indicating where the photos/videos were taken. Appx661 (col.35:13-col.36:7). The Board found all of that unpatentable over A3UM and Belitz, which MemoryWeb no longer contests. Appx322-334. To that undisputedly invalid claim, claims 3 and 4 add the basic requirement of responding to a click on a "scaled replica" by showing the photo and a "map image indicating" where the photo was taken. Appx661 (col.36:15-27) ("responsive to a click or tap of a first one of the displayed scaled replicas in the first location view, displaying a first digital photograph associated with the first scaled replica in the first location view").

The Board had ample evidence for its finding that "it would have been obvious" to impart that functionality—that is, " to modify A3UM such that selecting a photo in the Browser" would "display[] that photo in the Viewer" and a "Map Pane at the bottom of the Inspector pane." Appx355-356 (quoting Appx39344; citing Appx39344-39346; Appx40481-40485 (¶¶199-204)). Across ten pages of its final written decision, plus three more on rehearing, the Board detailed the parties' dispute on these claims' basic limitation and the Board's resolution of that dispute. Appx347-356; Appx366-368. In so doing, the Board expressly "credited" Apple's arguments. Appx367 (citing Appx355). Those arguments were based on many undisputed facts and plain prior-art disclosures, including that A3UM discloses

views in which clicking on a scaled photo in the Browser causes display of a full-size version of the image in the Viewer, that A3UM discloses a small Map Pane that indicates where a selected image was shot, and that other prior art includes related disclosures. Appx39344-39346, Appx39912-39913 (together citing, *e.g.*, Appx2919-2920, which plainly shows a small Map Pane; Appx2512, Appx2712, which plainly describe, outside the Places view, clicking on a photo in the Browser to display a large image in Viewer; Appx3631 (col.3:42-45, col.4:14-19), which describes how displaying a map with a large image "enhance[s] the browsing experience"); Appx40481-40485 (¶¶199-204) (discussing similar evidence).

As the Board recognized, Apple did not stop there. Appx355. Backed by similarly clear evidence and expert testimony, Apple also addressed what would have been obvious to persons of ordinary skill in the art from the prior art's plain disclosures. Appx355. Apple's expert explained the known benefits of displaying a full-size image and a small map at the same time: "prior art techniques included displaying 'an enlarged view of a digital photograph in a main location in a user interface' at the same time a 'map pane' was displayed on the same interface," which can "enhance the [photo] browsing experience." Appx40483 (¶201) (quoting Appx3624 (Fig. 5), Appx3631 (col.3:42-45, col.4:14-19), Appx3635 (col.12:28-32, col.12:57-59); alteration omitted); *see* Appx39345-39346 (citing Appx3624, Appx3631, Appx3635).

Apple's petition similarly explained—and the Board credited (Appx355-356)—that modifying A3UM to automatically display this useful pair of elements "would have been well within a skilled artisan's abilities and suggested by A3UM's disclosure of automatically displaying certain UI elements if desired." Appx39346 (citing Appx40484-40485 (¶203); Appx2535, Appx2720, Appx2764-2765, Appx2644). Among other supporting evidence, A3UM itself shows how users could "set the Viewer to automatically open a selected stack" of images or to "automate tasks" they repeat "on a regular basis." Appx2720, Appx2644. Thus, Apple argued—and the Board found—that "[m]odifying A3UM as stated would arrange old elements to perform their known function to yield no more than one would expect from such an arrangement: automatically displaying A3UM's Map Pane in its usual place when a photo (with location information) is selected in the Browser to display in the Viewer." Appx39346 (citing Appx40485 (¶204)); *see* Appx355 (citing Appx39344-39346).

### 2. *MemoryWeb's procedural challenges fail, as does its substantive challenge to the extent it even makes one*

#### a. *MemoryWeb's attack on an obviousness theory the Board did not adopt is immaterial and wrong*

MemoryWeb leads its appeal on these claims by challenging an obviousness theory the Board did not adopt. Recycling its argument from other patents about whether A3UM's Places view discloses expressly replacing the map with a full-size

image in the Viewer, MemoryWeb argues the Board erred because Apple's expert allegedly made a "wrong" assertion about A3UM. MemoryWeb.Br.69. But as the Board itself explained, MemoryWeb's argument is "irrelevant" because the allegedly "wrong" assertion was in support of one of two alternative obviousness theories and the Board adopted the other theory. Appx355-356. MemoryWeb cannot overcome that well-supported conclusion.

MemoryWeb concedes Apple's petition presented two theories. Appx39344; MemoryWeb.Br.70. In the theory the Board credited, Apple argued "it would have been obvious to modify A3UM such that selecting a photo in the Browser, in addition to displaying that photo in the Viewer, would display A3UM's Map Pane at the bottom of the Inspector pane." Appx39344-39346 (citing Appx40481-40485 (¶¶199-204)). Apple was express that this theory was presented "[a]lternatively." Appx39344; Appx40481-40482 (¶199) (same). For all the reasons shown in Part V.A.1, *supra*, the Board found that theory proved obviousness by a preponderance of the evidence.

As also shown in Part V.A.1, *supra*, nothing about that theory depends on what MemoryWeb deems an "erroneous assertion" (MemoryWeb.Br.69): whether A3UM discloses that clicking a thumbnail image in the Places Browser would replace the map with a full-size image in the Viewer. Appx355-356 (Board finding same); Appx366-367. MemoryWeb's own arguments confirm this. It identifies just

48

two paragraphs of Apple's expert declaration as containing the purported error. MemoryWeb.Br.69-70; Appx40481 (¶198); Appx40477-40478 (¶194) (citing Appx2712, Appx2512 (Aperture manual)).  But the parts of Apple's petition laying out the alternative theory cite neither paragraph, nor even the pages of A3UM on which those paragraphs relied.    Appx39344-39346 (citing Appx40481-40485 (¶¶199-204)).

Focusing on Apple's expert, not Apple's actual petition, MemoryWeb argues that even for Apple's alternative theory Apple's expert "wrongly assumed that A3UM already discloses that selecting a thumbnail in the Browser displays a photo in the Viewer." MemoryWeb.Br.70.  Not so.  Apple's petition cited paragraphs from its expert's declaration presenting independent evidence for the proposed modification. Appx40483 (¶201) (citing Appx3624 (Fig. 5), Appx3631 (col.3:42-45, col.4:14-19), Appx3635 (col.12:28-32, col.12:57-59)), Appx40484-40485 (¶203) (citing Appx2535, Appx2720, Appx2764-2765, Appx2644).  That evidence included disclosures from A3UM and additional prior art showing the resulting interface with a large image and a small map, and that it would have been obvious to display that interface in response to a single click in the Places view. *Supra* Part V.A.1.

Without acknowledging this evidence, MemoryWeb insists Apple's alternative theory was not really an alternative because Apple's expert described

"'modifying A3UM so that selecting a photo in the browser, *in addition to* displaying the photo in the Viewer, would (optionally) automatically display the Map Pane.'" MemoryWeb.Br.70 (quoting Appx40481-40482 (¶199); emphasis added). According to MemoryWeb, "in addition to" shows the expert "wrongly assumed that A3UM already discloses" displaying a photo in the Viewer. MemoryWeb.Br.70. But A3UM does already disclose displaying photos in the Viewer, such as part of the Brower-Viewer Split view. Appx2712; Appx2512. That is functionality that "would be maintained" in the proposed combination. *See* MemoryWeb.Br.70 (citing Appx40477-40479 (¶¶194-95)). And MemoryWeb simply skips past the start of the expert's statement in which he was clear that he was describing how "it would have been obvious *to modify* A3UM" to include that functionality in the Places view as well. Appx40481-40482 (¶199) (emphasis added).

Regardless, even had Apple cited the purported "erroneous assertion" from Apple's expert, MemoryWeb's argument would fail for multiple reasons. *First*, MemoryWeb still could not show the alleged erroneous assertion was essential to Apple's alternative theory. Earlier portions of the declaration present even more evidence independently showing Apple's proposed modification would have been obvious. Specifically, Apple's expert explained that in Belitz, an "image can be opened in full size by clicking or double clicking or tapping on it which launc[h]es an image browsing or editing application." Appx40478-40479 (¶195) (citing

50

Appx3593).  And A3UM discloses, in views other than the Places view, that "[w]hen you select images in the Browser, the Viewer immediately displays a detailed view of your selection."  Appx40477-40478 (¶194) (citing Appx2712; Appx2512).  Thus, other evidence from the manual and from Belitz supports the Board's conclusion that a skilled artisan would have added this functionality to Places.

*Second*, MemoryWeb is wrong again about what Apple's expert, Dr. Terveen, said.  MemoryWeb quotes Dr. Terveen at paragraph 198 as stating that "A3UM discloses that selecting an image in the Browser will display that image in the Viewer."  Appx40481 (¶198).  But that statement is correct, as borne out by the portions of A3UM Dr. Terveen cites, which expressly describe that functionality in the Browser-Viewer Split view.  Appx40481 (¶198) (citing Appx2512, Appx2712).  MemoryWeb recasts the statement as being about how the unmodified Places view operates, but that is MemoryWeb's gloss, not Dr. Terveen's.  Appx40477-40478 (¶194).  Dr. Terveen did refer to the Places view in paragraph 194 when describing that "[s]electing a thumbnail in the Browser then prompts display of the original digital image in the Viewer, which replaces the Places map view."  Appx40477-40478.  But the context of his statement shows he was describing A3UM functionality from the Browser-Viewer Split view that would have been applied to "replace[] the Places map view" in Apple's first proposed obviousness theory.  Appx40477-40478.  After all, his support for that statement came from expressly

non-Places-view sections of A3UM, showing he fully understood this functionality exists in A3UM outside the Places view.  Appx40478 (citing Appx2512, Appx2712).  The Board never found otherwise.  Appx347-356.  Regardless, MemoryWeb's attempt to litigate a theory the Board did not adopt is no basis for disturbing the theory the Board did adopt.

> **b.    *MemoryWeb fails to show a lack of adequate explanation, or support, for the Board's detailed and well-supported findings***

MemoryWeb separately seeks to "reverse[], or at least vacate[]" because the Board's obviousness findings "are not adequately explained or supported."  MemoryWeb.Br.71-73.  Yet despite mouthing a purported lack of substantial evidence, MemoryWeb focuses solely on a purported lack of explanation or findings.  MemoryWeb.71-73 (arguing Board made "*zero* findings," "ignored MemoryWeb's arguments," "failed to explain *why*," failed "to weigh"; MemoryWeb's emphasis).  MemoryWeb thus has waived, or at least forfeited, any substantial-evidence challenge.  *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("arguments not raised in the opening brief are waived").  Given the wealth of supporting evidence discussed in Part V.A.1, *supra*, any challenge would fail anyway.

MemoryWeb cannot sidestep that evidence by contending the Board made "*zero* findings as to why it would have been obvious to modify A3UM's Places

view" as Apple proposed. *See* MemoryWeb.Br.71-72. As shown, the Board detailed the parties' arguments over several pages and expressly adopted Apple's arguments as more persuasive—citing the relevant portions of Apple's petition and expert declaration. Appx347-356; Appx366-368; *supra* Part V.A.1. That's more than enough for the agency's rationale to be "reasonably be discerned." *Huston*, 308 F.3d at 1281.

Nor is MemoryWeb correct that the Board "ignored" "undisputed evidence" that an ordinary artisan would not modify A3UM because doing so "would destroy" a functional relationship between the Places map and Browser. *Contra* MemoryWeb.Br.71. The Board could not have "ignored" the issue because MemoryWeb's patent owner response never argued a skilled artisan would not be motivated to modify A3UM to display a full-size image when an image in the Places view browser is selected. Appx39659-39666. And MemoryWeb's sur-reply only obliquely raised the issue, simply asserting "that a POSITA would not modify A3UM's interplay between the Places map and Browser." Appx39822-39823 (citing Appx49504-49506 (¶¶213-216)). It was not until rehearing that MemoryWeb elaborated on how this loss of functionality would affect the user experience. Appx40027 (citing Appx49504-49506 (¶¶213-216)).

The Board is not required to discover and address issues parties have not raised. *Novartis*, 853 F.3d at 1327-28. And a cursory argument requires only a

"commensurate" discussion. *Id.* This Court thus affirmed in *Novartis* a Board decision expressly addressing only one of the three purported downsides the patentee alleged because the Board's discussion was "at least commensurate" with the patentee's one-sentence argument against motivation. *Id.* Here, the Board recognized that MemoryWeb had at least cursorily disputed motivation, recounted and expressly adopted Apple's "reasoning in support of the proposed modification," and explained that at least some parts of MemoryWeb's arguments against motivation "mischaracterize[d] the proposed modification." Appx354-355 (citing and crediting Apple's evidence and explanation recounted at Appx350-352). That alone was enough.

Yet the Board went even further, also addressing the issue in response to MemoryWeb's rehearing petition that for the first time elaborated on the alleged loss of functionality. Appx367-368. Acknowledging that explanation, MemoryWeb argues the Board "ignored MemoryWeb's arguments and evidence" and "failed to explain *why* these claims were obvious." MemoryWeb.Br.72-73 (MemoryWeb's emphasis). But the Board did explain, including by noting that MemoryWeb's argument was based on an overly rigid view of obviousness. Appx367-368. MemoryWeb and its expert assumed that, in an interface where clicking an image in the browser automatically replaces the map, there could be no way to "select a different pin on the map and investigate associated images." Appx40027;

Appx49504-49506 (¶¶213-216).  But a person of "ordinary creativity" looking to "what the combined teachings of the references would have suggested" could have envisioned ways—existing in A3UM or added—for a user to quickly navigate back to the map to investigate other pins.  *In re Keller*, 642 F.2d 413, 425 (CCPA 1981); *KSR*, 550 U.S. at 421.  Just because MemoryWeb dislikes the Board's explanation and conclusion does not mean the Board failed to explain its reasoning or ignored MemoryWeb's arguments.

Nor does MemoryWeb's dissatisfaction with the Board's conclusion show the Board failed to weigh MemoryWeb's alleged disadvantages against benefits, as MemoryWeb wrongly argues.  MemoryWeb.Br.73.  MemoryWeb argues the Board "did    not    find    any    advantage    to    Apple's    proposed    modification." MemoryWeb.Br.73.  But the Board expressly agreed with Apple's "reasoning in support of the proposed modification," which included that the proposed modification "would have improved the user's experience" and "would arrange old elements to perform their known function" with predictable results.  Appx350, Appx355.

Finally, MemoryWeb suggests without elaboration that the Board's decision on the '376 patent requires vacatur on the '658 patent because both cases involved disputes about alleged loss of a functional relationship.  MemoryWeb.Br.73.  As discussed in Apple's opening brief, the Board erred in rejecting Apple's obviousness

theory in the '376 proceeding.  Apple.Br.31-48.  Regardless, the Board's decision on the '376 patent addressed different claims, with different limitations, and involved different proposed modifications to the prior art.  *See supra* Part II.  In the '376 patent IPR, Apple proposed displaying a full-size image in the Viewer upon clicking a map marker in the Places view—with no intermediate click in the Browser.  Apple.Br.36-37.  But for the '658 patent, Apple's proposed modification does not replace the interactive map in the Viewer until a user clicks a thumbnail image in the Browser.  That distinction makes a difference:  a user could still use the interactive map to investigate images taken at different locations without ever leaving the Places view.

## B.    MemoryWeb's Belated Attempt To Raise A New Construction For Claims 8-12 Fails

The Board also correctly found that claims 8-12 of the '658 patent would have been obvious.  MemoryWeb's appeal arguments—which turn solely on the Board's analysis of claims 8 and 11—are forfeited and rely on the same atextual reading as its failed arguments in its appeal about the '020 patent.

### 1.    *The Board correctly found that A3UM disclosed or suggested claims 8 and 11*

Claims 8 and 11 depend, respectively, from claims 7 and 10.  Claims 7 and 10 recite "responsive to a click or tap of the [first/second] person selectable thumbnail image, displaying a [first/second] person view."  Appx661-662 (col.36:56-59,

col.37:4-8). Claims 8 and 11 simply require certain functions to be displayed in the "[first/second] person view." They recite the method of claims 7 and 10, "wherein the displaying the [first/second] person view further includes displaying a [first/second]-person-location selectable element." Appx661-662 (col.36:63-65, col.37:12-15).

The Board correctly found that "claims 8 and 11 read on A3UM." Appx346. It credited Apple's explanation that in A3UM, "[s]electing a user's snapshot will display … images containing that person's faces with A3UM's interface, including the viewer, the toolbar, and the inspector panes." Appx340 (quoting Appx39328). As Apple explained and MemoryWeb did not challenge, that is equivalent to the first/second person view recited in claims 7 and 10. Appx340. The Board further credited Apple's explanation that this view includes "'a Places link in the Library inspector,'" which is "'selectable' to invoke A3UM's Places view for all images with location information." Appx340 (quoting Apple's petition at Appx39328-39329 and citing Apple's expert testimony at Appx40512-40513 (¶¶250-251)). The Board found that this Places link is equivalent to claims 8 and 11's recited first/second-person-location selectable element. Appx340, Appx346. The first person view, including the location selectable element, is represented in the following annotated image that Apple presented to the Board:



Appx39329; Appx40974 (annotated); *see* Appx40512-40513 (¶¶250-251) (Apple's expert explaining same). The Board also agreed with Apple's alternative argument: that "it would have been obvious to modify A3UM so that the Places toolbar button (another '[first/second]-person-location selectable element' and part of the 'first/second person view') could be selected to display the photos of the selected person in the Places view." Appx346-347 (citing Apple's expert at Appx40512-40515 (¶¶252-257)).

### 2. MemoryWeb fails to show the Board erred in declining to construe "responsive to" or apply it to these claims

MemoryWeb does not challenge these underlying findings. Instead, it argues the Board erred in (1) declining to construe the "responsive to" limitation that appears in claims 7 and 10 and (2) declining to apply that limitation to claims 8 and 11. It thus asks the Court to "remand for the Board to consider … (1) the meaning

of 'responsive to' and (2) whether A3UM discloses" claims 8 and 11 "under the proper construction." MemoryWeb.Br.76. But the Board declined to construe "responsive to" on two independent grounds: MemoryWeb failed to argue for any particular construction, and the construction of that term was irrelevant because it did not apply to claims 8 and 11. MemoryWeb fails to challenge the first ground, and its challenge to the second ground rests on the same failed arguments as its challenges to the Board's decision on the '020 patent. Even if the Court concludes otherwise, that would not disrupt the Board's obviousness conclusion for claim 10, which does not turn on whether the display of the person-location selectable element is responsive to a click or tap. Appx662 (col.37:4-11).

First, MemoryWeb has doubly forfeited any argument that the Board should have construed "responsive to." As the Board observed, MemoryWeb had in its response agreed with Apple "that the claims should be afforded their plain and ordinary meaning." Appx284; Appx39595. And while MemoryWeb's sur-reply proposed a construction for "responsive to … displaying," the Board concluded that MemoryWeb had "not shown good cause as to why [it] should consider" that argument "at this late stage in this proceeding." Appx284. MemoryWeb thus "forfeited its proposed claim construction by not presenting it to the Board." *IOENGINE*, 100 F.4th at 1402. Nor does it challenge the Board's forfeiture

determination in this Court. *SmithKline*, 439 F.3d at 1319. That alone is reason to reject MemoryWeb's requested relief out of hand.

Regardless, the Board's alternative ground was correct too: any construction would be pointless because claims 8 and 11 have no "responsive to" requirement. Appx345-346. In this respect, the language of claims 8 and 11—and the language of claims 7 and 10 from which they depend—mirror the language of claim 1 of the '020 patent. Claims 7 and 10 require that a person view be displayed "responsive to" a user input—but claims 8 and 11 require only that this person view "further include[] displaying" a location selectable element. Appx661 (col.36:63-65); Appx662 (col.37:12-15). As explained above, MemoryWeb has no support for its assertion that persons of ordinary skill would understand that displaying a view responsive to an input necessarily requires displaying every element included in that view responsive to the same input. *See supra* Part IV.B.2.

In attempting to reach a different result here, MemoryWeb relies on irrelevant distinctions in claim language. First, MemoryWeb argues that claim 7's "responsive to" limitation must extend to claim 8 because claim 7's "displaying a first person view" is the antecedent basis for claim 8's "the displaying the first person view." MemoryWeb.Br.74-75. But the Board rightly rejected that argument when MemoryWeb raised it for the first time on rehearing. Appx368. And the question is not whether claim 8 is describing the same "first person view" as claim 7; that

never was in dispute. The question is whether a distinct element of the claims—the person-location selectable element—must be "responsive to" an input or simply "included" in the first person view. As in the '020 patent, the plain claim text shows only the latter is required. *Supra* Part IV.B.

Second, MemoryWeb accuses the Board of treating the person-location selectable element "inconsistent[ly]" from other features that are purportedly "responsive to" a click or tap: the "name" and "scaled replica" features that claim 7 says are "includ[ed]" in the first person view. MemoryWeb.Br.75. But the Court should reject MemoryWeb's strawman argument. The Board never said those "name" and "replica" features had to be displayed "responsive to" the same click or tap that produced the "first person view." Nor would it have: MemoryWeb made no separate arguments about claim 7. Appx339 (Board noting this failure). Instead, the Board noted that claim 7's "responsive to' requirement … pertains to 'displaying a *first person view*, the displaying the first person view including displaying (i) the name associated with the first person and (ii) a scaled replica of each of the digital photographs and videos in the third set of digital photographs." Appx345-346 (Board's emphasis). By emphasizing the phrase "first person view," the Board recognized that the "responsive to" requirement extends only to that element, and not to the rest of claim 7.

**C.    Affirmance In *MemoryWeb v. Samsung* Will Moot MemoryWeb's '658 Appeal**

The Board found unpatentable claims 1-13 of the '658 patent in *Samsung Electronics Co., Ltd v. MemoryWeb, LLC*, IPR2022-00221 (P.T.A.B. July 31, 2023). MemoryWeb appealed the Board's determination on all claims, and that appeal remains pending before this Court in *MemoryWeb, LLC v. Samsung Electronics Co., Ltd.*, No. 24-1316 (Fed. Cir.) (consolidated with 24-1315). If the Court affirms the Board's invalidation of claims 3-4 or 8-12 of the '658 patent in *Samsung*, there will be nothing left to resolve in MemoryWeb's appeal of those respective claims here. *MaxLinear*, 880 F.3d at 1377. The Court should in that situation dismiss the respective portions of the '658 appeal as moot. *XY*, 890 F.3d at 1295.

## CONCLUSION

The Court should vacate the Board's decisions that claims 13-16 and 45-48 of the '020 patent and claims 1-12 of the '376 patent are not unpatentable and remand for the Board to address any remaining unresolved issues. The Court should otherwise affirm.

Dated:  September 26, 2024       Respectfully submitted,

                                 /s/ Brian R. Matsui

BITA RAHEBI                            BRIAN R. MATSUI
REBECCA E. WEIRES                  SETH W. LLOYD
MORRISON & FOERSTER LLP      MORRISON & FOERSTER LLP
707 Wilshire Boulevard          2100 L Street NW, Suite 900
Los Angeles, CA 90017           Washington, DC 20037
                                   Tel.: (202) 887-8784
ALEXANDRA M. AVVOCATO     BMatsui@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

*Counsel for Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 13,311 words, excluding the parts of the filing exempted by the Rules.

Dated:  September 26, 2024                    _____/s/ Brian R. Matsui_____
                                                                        Brian R. Matsui

ny-2795005